UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PROCESS PIPE FABRICATORS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-CV-0869-CVE-SAJ |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Now before the Court is Plaintiff's Motion for Summary Judgment and Opening Brief in Support (Dkt. # 37). Plaintiff asserts that it has overpaid federal employment taxes and is entitled to a refund. Defendant responds that the Internal Revenue Service ("IRS") had no obligation to collect the full value of invoices, but had the discretion to proceed in the way it thought would recover the most value from levied property.

**I.**

Process Pipe Fabricators, Inc. ("Process Pipe") is an Oklahoma corporation specializing in assembling gas transmission units for offshore and onshore gas transmission facilities. It developed a relationship with Gastech Engineering Corporation ("Gastech") in which Process Pipe would enter a subcontract with Gastech to perform work for Gastech customers. Process Pipe fabricated equipment for Gastech customers Schlumberger, Inc. and NGLP, but Gastech was responsible for obtaining payment from the customer. In order to receive payment, Process Pipe submitted invoices directly to Gastech based on the subcontract, and relied on Gastech to pay the invoices. From July 20 to November 11, 1996, Process Pipe submitted six invoices to Gastech totaling $256,641. The standard payment procedure between the parties required Gastech to pay the invoices within 30

days, but Process Pipe would often allow Gastech an additional 30 days to remit payment if Gastech requested additional time. However, Gastech did not pay Process Pipe any part of the six invoices noted above.

Process Pipe neglected to pay federal employment taxes from March 31, 1992 to March 21, 1996, leaving a total tax deficiency of $354,520. The IRS served a notice of levy on Gastech on August 16, 1996, ordering that Gastech pay any outstanding amounts on invoices from Process Pipe directly to the IRS in satisfaction of Process Pipe's deficiency. The IRS subsequently sent new notices of levy to Gastech on October 23, 1996 and April 15, 1999 requesting payment on the outstanding invoices. Process Pipe was notified of the notices of levy and did not attempt to collect the invoices from Gastech following the notices of levy by the IRS. Gastech entered a payment plan with the IRS in October 1996, requiring it to make an initial payment of $5,000 and monthly payments of $750 every following month. These payments continued until September 2000 and Gastech paid a total of $38,000 under the payment plan. Given that the outstanding balance on the invoices payable to Process Pipe by Gastech was $256,641, these payments constituted a partial payment of Gastech's obligations under the invoices. Process Pipe was not involved with the IRS' efforts to collect the unpaid invoices from Gastech, nor did the IRS notify Process Pipe of its negotiations with Gastech to establish a payment plan.

On January 8, 1999, the United States filed a lawsuit against Gastech, <u>United States v. Gastech Engineering Corp.</u>, Case No. 99-CV-0026-JOE (N.D. Okla.), alleging that Gastech failed to honor the notices of levy and seeking a judgment for the face value of the invoices. The court entered a judgment against Gastech for $309,112 for its failure to comply with the notices of levy served by the IRS. However, on March 8, 2002, the United States settled with Gastech while the

2

case was on appeal to the Tenth Circuit. The United States agreed to accept $167,000, paid over six years, in full satisfaction of its judgment against Gastech. The IRS did not return the invoices to Process Pipe for any further collection activity, nor was Process Pipe involved with the settlement process.

The IRS continued to collect unpaid federal employment taxes from Process Pipe until October 2004. On May 6, 2004, Process Pipe paid the IRS $33,750 for employment taxes for the quarter ending March 31, 1996. The IRS served a notice of levy on Bank of America NA to garnish Process Pipe's bank account, and the bank paid the IRS $48,100 out of Process Pipe's accounts. On November 9, 2005, Process Pipe paid the remaining amount of overdue employment taxes, submitting 5 separate checks totaling $302,973. This fully satisfied Process Pipe's employment tax deficiency. However, Process Pipe believed that it had overpaid its taxes and filed a total of 6 refund claims with the IRS to collect an alleged overpayment of $351,073.[1] Process Pipe complied with the administrative procedures for pursuing a refund claim under the Internal Revenue Code ("IRC"), but the IRS took no action on Process Pipe's claims. After six months elapsed, Process Pipe initiated this case to recover an alleged overpayment of $37,500. This case was consolidated with a second case filed by Process Pipe, styled Process Pipe Fabricators, Inc. v. United States, Case No. 05-CV-0304-CVE-FHM (N.D. Okla.).

---

[1] This amount includes $48,100 paid by Process Pipe's bank to the IRS and $302,973 paid by Process Pipe on November 9, 2004.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiff's motion for summary judgment is premised on the theory that the IRS was required to credit it for the face value of the Gastech invoices, even though the IRS could not or did not collect the full amount. Plaintiff claims that the risk of loss for recovering the value of the invoices shifted to the IRS once the IRS served Gastech with a notice of levy. The parties have presented conflicting case law regarding which party bears the risk of loss.

The IRC creates a statutory lien against "all property and rights to property, whether real or personal, belonging to [the taxpayer]" in favor of the government when a taxpayer fails to remit the full amount of taxes owed. 26 U.S.C. § 6321. The IRS has broad powers to collect unpaid taxes, which includes the power to serve a notice of levy against property owned by the taxpayer. United States v. National Bank of Commerce, 472 U.S. 713, 720-21 (1985). "This notice gives the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government." Id. at 721. The IRS initiates an administrative levy by serving a notice of levy on the person holding the subject property. 26 U.S.C. § 6331. By filing a notice of levy, the IRS acquires the authority to dispose of the property to satisfy any tax deficiency. Kane v. Capital Guardian Trust Co., 145 F.3d 1218, 1221 (10th Cir. 1998). Once the notice of levy is served, the IRS "steps into the shoes of the taxpayer and acquires 'whatever' rights to the property the taxpayer possessed." Id. (quoting United States v. Bell Credit Union, 860 F.2d 365, 369 (10th Cir. 1988)).

A notice of levy, without more, does not transfer ownership of the property to the IRS. United States v. Whiting Pools, Inc., 462 U.S. 198, 209-210 (1983).

Plaintiff argues that once the IRS has levied upon a taxpayer's property, if the IRS exercises dominion and control over the property it must credit the taxpayer for the face value of the property. In support of this proposition, plaintiff cites United States v. Pittman, 449 F.2d 623 (7th Cir. 1971), and In re Barlows, Inc., 36 B.R. 826 (Bankr. E.D. Va. 1984). In Pittman, the IRS accepted a quitclaim deed to a taxpayer's rental property and collected rent on the property to pay a tax deficiency. 449 F.2d at 625. The IRS did not execute a formal administrative levy on the property, but the taxpayer argued that he was deprived of control over the property once the IRS began managing the rental property. The IRS claimed that it was seizing only rent from the property, but not the underlying real property. While the IRS was managing the property, the buildings deteriorated. In fact, all but one of the houses was burned down or condemned after the IRS relinquished control over the property. Id. at 626. The Seventh Circuit rejected the government's argument that the taxpayer was the equitable owner of the property, and found that the IRS' actions showed an intent to assert ownership over the taxpayer's property. Based on the facts of this case, the court held that the taxpayer had no further rights in the property and the taxpayer should be entitled to a credit "against his tax liability reflecting the value of the property at the time it should have been sold by the Government following its seizure." Id. at 628. However, the court rejected the taxpayer's valuation of the property as inflated and remanded to the district court for a determination of the fair market value at the time the IRS seized the property.

Plaintiff relies on Barlows to support its claim that it is entitled to a credit for the full value of its accounts receivable. In that case, the IRS obtained a tax lien against the taxpayer before the

6

taxpayer declared bankruptcy, and levied against an account receivable due from Western Development Corporation ("Western") with a stated value of $102,544.  Barlows, 36 B.R. at 827. The IRS established a payment plan with Western, without consent from the taxpayer, and collected $27,000 before Western defaulted on the remainder of the debt.  The court found that this amounted to control over the property, and the taxpayer should be credited for the full value of the account receivable.  Id. at 828.  Due to the taxpayer's Chapter 11 bankruptcy, returning the account receivable to the taxpayer for collection of the remaining debt would have been difficult.  By failing to initiate a sale of the account receivable, the IRS did not make a reasonable effort to obtain the maximum value for the property.  The court found that the taxpayer was entitled to a credit against his tax liability for the full value of the account receivable.  Id. at 829.

The IRS argues that neither Pittman nor Barlows has been followed by other courts, and that plaintiff is not entitled to a credit for the full value of the accounts receivable.  The Fifth and Ninth Circuits have held that a taxpayer is entitled to a credit only for any amount the IRS actually collects, but there is not an automatic entitlement to a credit for the face value of levied upon property.  Stead v. United States, 419 F.3d 944 (9th Cir. 2005); Cash v. United States, 961 F.2d 562 (5th Cir. 1992).  The Fifth Circuit held that the IRS did not have a duty to sell seized accounts, but if the IRS does receive payment from the account debtor, the taxpayer is entitled a credit for amounts received by the IRS.  Cash, 961 F.2d at 568. In Cash, the IRS issued notices of levy against accounts receivable worth $200,000, but was able to collect only $73,039 from the account debtors. The court found that the Congress did not intend to impose a duty on the IRS to sell levied upon property, but merely provided that the IRS could sell a taxpayer's assets to collect unpaid taxes. Going even further, the court stated:

7

> Neither is the IRS required to expend any particular level of effort to collect the levied upon accounts when it has not negotiated new terms with the account debtor. No statute or case law imposes such a requirement. The IRS may generate more revenue at a lower cost by simply collecting the easy paying accounts without expending the time and money to pursue the taxpayers' unwilling debtors. In the ordinary case, the IRS need only ensure that the taxpayer is credited with the amount actually collected on the accounts.

Id. at 569. If the taxpayer is unhappy with IRS' collection efforts, the taxpayer has the right to pay the tax deficiency in order to redeem the account and may attempt to collect the account on his own. Id.

The Ninth Circuit has followed Cash, and held that a levy, without other evidence, is not sufficient to shift the risk of loss for collecting the full amount of an account receivable to the IRS. Stead, 419 F.3d at 948-49. A levy does not transfer ownership of property to the IRS unless it sells the property in a tax sale or disposes of the asset in some other way. Id. at 947-48. In order to trigger a rule such as in Pittman and Barlows, the IRS must attempt to collect on the levied property and must engage in affirmative negligence that would justify shifting the risk of loss. Id. at 948-49. This reasoning finds a middle ground between Cash and Barlows, and it is persuasive. It protects the IRS from refund claims any time the taxpayer is unhappy with collection efforts, but does not absolutely immunize the IRS from acts of negligence in the collection process. Stead strikes a reasonable balance between the interests of the parties, but still shows a proper deference to the IRS when it attempts to collect on levied property.

The Court finds that Pittman and Barlows are distinguishable based on the unique facts of those cases. In Pittman, the IRS' negligent management of the property caused the value of the levied property to decline, and the facts of that case would arguably satisfy the rule created in Stead. Based on the facts, the Pittman court concluded that the IRS seized control of the taxpayer's rental

property and the IRS failed to collect a reasonable value for the property through its own negligence. However, even in Pittman, the taxpayer was required to prove the actual value of the property in the hands of the IRS. See Pittman, 449 F.2d at 628-29. Barlows arose in the context of a bankruptcy proceeding, and the taxpayer had no further right to control the subject property once it filed for bankruptcy. The bankruptcy in Barlows was a Chapter 11 reorganization, and incorporating the account receivable into the bankruptcy estate would have been difficult. Barlows, 36 B.R. at 829. The only practical remedy for the taxpayer in Barlows was a tax credit for the full value of the asset. Both Pittman and Barlows are limited by their facts, and do not create a general rule that a taxpayer must receive a credit for the full value of levied property if the IRS collects less than the taxpayer believes is possible from the asset. The Court holds that Process Pipe is not entitled to a credit based solely on the face value of its accounts receivable, because it has not provided any case law that would support this conclusion.

In this case, Process Pipe assumes that the invoices are worth their face value, but it admits that it was unsuccessful in its attempts to collect the outstanding debts from Gastech. The IRS had similar success with Gastech, and initially permitted Gastech to pay the invoices on an installment basis. Process Pipe claims the IRS had a duty to initiate a sale of the invoices after serving the notice of levy or release the levy on the invoices if it elected not to sell them. See 26 U.S.C. §§ 6331, 6335, 6343. Contrary to Process Pipe's assertions, the IRS did not have a duty to sell the property immediately upon issuing the levy, but could use its discretion to establish a payment plan in order to get the maximum value out of the asset. Cash, 961 F.2d at 567. Even if Process Pipe had requested a sale, the IRS had no obligation to sell the property under 26 U.S.C. 6335(f), which states:

9

> The owner of any property seized by levy may request that the Secretary sell such property within 60 days after such request (or within such longer period as may be specified by the owner). The Secretary shall comply with such request unless the Secretary determines (and notifies the owner within such period) that such compliance would not be in the best interests of the United States.

In this case, there is no evidence that Process Pipe ever requested that the IRS sell the invoices or objected to the payment plan, even though it was aware of the notices of levy served on Gastech. Although Process Pipe is dissatisfied that the IRS did not obtain the full value of the invoices, it has fallen far short of showing that IRS' actions were unreasonable in this case. The trial attorney for the United States in United States v. Gastech Engineering Corp., Andrew T. Pribe, has submitted an affidavit stating that the settlement was in the best interest of the government, because he did not believe that Gastech could pay the face value of the invoices.[2] He was also concerned that Gastech would declare bankruptcy, and the entire debt would become uncollectible.

The law does not require the Court to impose a tax credit for the full value of the invoices, nor is there any evidence establishing that the IRS or Process Pipe was likely to collect the full debt from Gastech. Even if the Court applied Barlows and Pittman as Process Pipe suggests, a tax credit for the face value of the invoices would be improper in this case and Process Pipe has not offered any evidence that the IRS acted negligently by entering a payment arrangement or settling with

---

[2] Plaintiff requests that the Court disregard Pribe's affidavit because it contains conclusory statements that are not supported by reference to supporting evidence. See Bright v. Moss Ambulance Service, Inc., 824 F.2d 819 (10th Cir. 1987); Campbell v. Metropolitan Life Ins. Co., 812 F. Supp. 1173, 1774 (E.D. Okla. 1992). In appropriate circumstances, a court can exclude a sham affidavit introduced for the sole purpose of creating a genuine issue of material fact. Franks v. Nimmo, 796 F.2d 1230 (10th Cir. 1986). However, the Court finds that the affidavit contains factual statements that are relevant to plaintiff's motion for summary judgment and are supported by the evidence.

Gastech. Consequently, the Court finds that there is a genuine issue of material fact concerning the value of the assets, which precludes the Court from entering summary judgment in plaintiff's favor.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment and Opening Brief in Support (Dkt. # 37) is **denied**.

**DATED** this 20th day of September, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT